THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BREANNA POST, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOONEY & BOURKE, INC.,<br><br>Defendant. | Case No. 2:26-cv-00249-LK<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

## I. INTRODUCTION

Plaintiff's theory of liability under CEMA, as applied, is both expressly preempted by CAN-SPAM and inconsistent with the national standard created by Congress and thus subject to conflict preemption.

The Ninth Circuit and other courts have repeatedly indicated that CAN-SPAM's preemption exception, 15 U.S.C. § 7707(b)(1), is a "limited, narrow exception" that permits states to regulate email subject lines only under "traditional tort theories." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061-63 (9th Cir. 2009). Plaintiff agrees that *Virtumundo*'s interpretation of the preemption exception is controlling. Dkt. No. 22 ("Resp.") at 8. And, as *Virtumundo* made clear, permitting state statutes governing commercial emails that allow for strict liability or do not adhere



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

to traditional tort theories "would create 'an exception to preemption [that] swallow[s] the rule and undermine[s] the regulatory balance that Congress established,' and which would once again subject legitimate businesses to inconsistent and possibly incompatible state regulations." 575 F.3d at 1063 (citation omitted) (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 356 (4th Cir. 2006)).

Given this direct authority, Plaintiff unsurprisingly concedes that CEMA does not permit strict liability for all false or misleading information. The parties agree that to avoid preemption, Plaintiff must at least allege a ***material*** falsehood or misrepresentation. Resp. 8-10. However, Plaintiff fails to do just that—she does not allege that any of Defendant's emails were materially false as to the essence of the bargain—instead inviting the Court to make unreasonable inferences that are not sufficient to survive either Rule 8 or Rule 9(b). Resp. 11. Governing Washington law on the issue, rather than misconstrued dicta, indicates that statements that create a false sense of urgency are not, in themselves, material. *Brummett v. Washington's Lottery*, 171 Wn. App. 664, 676, 288 P.3d 48 (2012). For this reason alone, the Court should dismiss Plaintiff's Complaint.

Plaintiff's claims are also clearly subject to conflict preemption. Congress intended through CAN-SPAM to create a regulatory balance whereby businesses would be subject to known tort standards of liability for their commercial emails. *Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007). Plaintiff's theory whereby a party need not establish these traditional tort elements under CEMA "would interfere with the careful balance struck by Congress" to establish a consistent scheme of email regulation, subjecting her claims to conflict preemption even though such a theory may be consistent with other purposes of CEMA. *See Arizona v. United States*, 567 U.S. 387, 406 (2012).

Finally, Plaintiff fails to adequately plead objective facts establishing falsity under CEMA, relying instead on suspicious circumstances that do not establish that the emails were false at the time they were sent.

Accordingly, Plaintiff's Complaint should be dismissed with prejudice.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## II. ARGUMENT

### A. The Parties Agree This Court Has Subject Matter Jurisdiction.

As detailed in Defendant's opening brief (Dkt. No. 17, "Mot."), the Court has jurisdiction to hear Plaintiff's claim. Mot. 4-5. Plaintiff agrees that receiving "unwanted or unlawful spam emails" is a nuisance injury sufficient to establish jurisdiction, Resp. 3-4, which courts have held to be sufficiently concrete for purposes of the standing analysis. *See Brinton v. Vivint Inc.*, 2024 WL 3688589, at *3 (W.D. Wash. Aug. 7, 2024). The Court may thus properly hear this case.

### B. Plaintiff Admits That *Virtumundo*'s Interpretation of CAN-SPAM Is Controlling.

Plaintiff spills much ink trying to confine the Ninth Circuit's analysis of CAN-SPAM's preemption and exemption clause to CEMA's point-of-origin provision, Resp. 6-7, but ultimately concedes the import of *Virtumundo*'s preemption clause analysis to this case.

As Plaintiff admits, *id.* at 6, the *Virtumundo* Court assessed "[w]hether the exception language of § 7707(b) permits states to prohibit e-mail activity that is *not* unfair or deceptive[.]" *Virtumundo*, 575 F.3d at 1062 n.21. And the *Virtumundo* Court did just that—determining that "[t]he CAN–SPAM Act established a national standard, but left the individual states free to extend ***traditional tort theories*** such as claims arising from fraud or deception to commercial e-mail communication." *Id.* at 1063 (emphasis added). The Court did not confine its analysis solely to CEMA's point-of-origin provision. Even more tellingly, the Court rejected suggestions by the Washington Attorney General (similarly raised by Plaintiff in her response to Defendant's conflict preemption argument, *see* Resp. 17), that Congress could not have intended this national standard to permit "illegitimate commercial behavior" absent an analysis of what unfair or deceptive activities Congress intended to regulate in the statute as a whole. *Virtumundo*, 575 F.3d at 1062 n.21 (noting that such an argument "begs the question" of what is unfair or deceptive). To determine the intent of Congress and the scope of CAN-SPAM preemption, the Court had to discern the meaning of CAN-SPAM's preemption clause and exception in its entirety, not merely



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

as applied to deceptive headers.

In doing so, and contrary to Plaintiff's assertions otherwise, Resp. 8, 15-16, the *Virtumundo* Court expressly affirmed the reasoning of the Fourth Circuit in *Omega* and *Omega*'s reasoning therefore bears directly on the preemption analysis here. *See, e.g.*, *Virtumundo*, 575 F.3d at 1061 ("Having independently analyzed the CAN–SPAM Act's text, structure, and legislative purpose, ***we reach the same conclusion as*** the district court and ***the Fourth Circuit***, and interpret the CAN–SPAM Act's express preemption clause in a manner that preserves Congress's intended purpose[.]" (emphasis added)). It expressly used the same statutory canon analysis to determine the meaning of CAN-SPAM's preemption exception. *Id.* at 1062 (adopting *Omega*'s statutory analysis). And the *Omega* Court, with which the Ninth Circuit agreed, determined that in drafting this preemption exception "Congress was operating in the vein of tort . . . and intended falsity to refer to other torts involving misrepresentations, rather than to sweep up errors that do not sound in tort." *Omega*, 469 F.3d at 354. To do otherwise would "upend this balance and turn an exception to a preemption provision into a loophole so broad that it would virtually swallow the preemption clause itself." *Id.* at 355; *see also Virtumundo*, 575 F.3d at 1063 (agreeing with the *Omega* Court's reasoning that permitting burdensome non-tortious state regulations would swallow the preemption exception and destroy the national standard erected by Congress, "subject[ing] legitimate businesses to inconsistent and possibly incompatible state regulations").

Plaintiff tries to explain away the *Virtumundo* Court's repeated emphasis that CAN-SPAM's preemption exception applies only to "traditional tort theories such as claims arising from fraud or deception," 575 F.3d at 1063, by arguing that the Court never used the words "common law fraud," "reliance," or "strict liability" and therefore could not have intended to incorporate fraud standards into the preemption analysis, Resp. 15-16. Such an argument is specious at best, and belied by the Ninth Circuit's subsequent reiteration of its holding in *Virtumundo*. *See Silverstein v. Keynetics, Inc.*, 727 F. App'x 244, 246 (9th Cir. 2018) (affirming district court's dismissal of California CEMA claim as preempted in context of domain name misrepresentations



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

because the domain names were not "materially false or misleading" so as to fall within the "traditionally tortious or wrongful conduct," exception to CAN-SPAM preemption). The Fourth Circuit has also, post-*Omega*, reiterated that "a state's anti-spam statute is not preempted so long as it deals with falsity or deception in the vein of tort." *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015).

Plaintiff's concession that *Virtumundo*'s interpretation of CAN-SPAM's preemption provision and exception are controlling, Resp. 8 (referring to the Ninth Circuit's "governing decision in *Gordon*"); *id.* at 13 (affirming *Virtumundo*'s incorporation of, at minimum, a "materiality" standard into the CAN-SPAM preemption provision and exception), ultimately belies any argument that *Virtumundo* is applicable only to cases involving email headers and this Court must follow *Virtumundo*'s controlling analysis.

### C. The Parties, at Minimum, Agree That a CEMA Plaintiff Must Plead Materiality to Avoid Preemption.

Plaintiff agrees that to escape preemption under CAN-SPAM, it must be apparent from ***her*** complaint that Defendant issued materially false or misleading subject lines. *Id.* at 8-10; *see also id.* at 13 ("*Gordon* and its progeny stand for the incorporation of *materiality* under common law tort theories to invoke preemption."). Yet, even construing the well-pleaded facts in her favor, there are no allegations that the emails were material to Plaintiff, let alone members of her purported class.

The parties both agree that pursuant to *Virtumundo*, a party is not liable for "immaterial inaccuracies or omissions." 575 F.3d at 1062. Plaintiff also agrees that "a misrepresentation is material if a reasonable person would attach importance to it in deciding how to proceed, or if the defendant knew (or should have known) that the recipient would likely deem it important." *Kousisis v. United States*, 605 U.S. 114, 131 (2025). Materiality, "[w]hether in tort or contract law . . . asks whether the misrepresentation 'constitut[ed] an inducement or motive' to *enter into a transaction*." *Id.* (emphasis added); *see also Universal Health Servs., Inc. v. United States*, 579



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

U.S. 176, 193 (2016) ("Under any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'"); *Martin v. Miller*, 24 Wn. App. 306, 309, 600 P.2d 698 (1979) ("A reasonable man would clearly attach importance to the existence of these representations in connection with his decision to enter into the transaction.").

To be material, then, a misrepresentation must go to the essential aspects of the bargain. *Universal Health Servs.*, 579 U.S. at 193 n.5. And here, Plaintiff alleges nothing about the essentials of the bargains she alleges are misleading. *See Zander v. Blumenthal*, 198 N.E.2d 93, 95 (Ohio Ct. App. 1964) (noting that a material representation affects the "identity, value, or character of the subject matter of the contract"); *Stone v. Robie*, 29 A. 257 (Vt. 1894) (noting that misrepresentations were not material because they "did not relate to the quantity, quality, or value of the articles sold"). She does not allege that the email subject lines she received stated false prices or misrepresented the goods sold, or that consumers would not receive the promoted discount as advertised if they ultimately made a purchase based on the representations in the email subject line. Instead, she merely gestures at allegations in her Complaint citing literature that false urgency tactics "can" impact consumer behavior, *see* Resp. 8-9, but none of these allegations rise to the level of plausibility necessary under federal pleading standards, let alone the heightened requirement of Rule 9(b). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'").

Plaintiff erroneously suggests that the Washington Supreme Court in *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 596, 567 P.3d 38 (2025), determined that statements about the length or duration of a sale were material to the bargain. Resp. 10. But *Brown* did not discuss materiality. In contrast, the focus of the Court in its reference to "the duration or availability of a promotion" was on whether such statements could be representations of facts, which may be actionable, rather than mere puffery, which is not. 4 Wn.3d at 596. Nowhere did the *Brown* Court purport to interpret



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

CAN-SPAM or analyze CAN-SPAM preemption, and the Court certainly did not hold that representations regarding the duration or availability of a promotion were material such that they fell within CAN-SPAM's preemption exception.[1]

Instead, in the only Washington case Defendant has been able to identify directly addressing the false urgency issue, the Washington Court of Appeals determined that a representation about the speed of sale of raffle tickets was ***not*** material. *See Brummett*, 171 Wn. App. at 676. The Court reasoned that an advertising vendor's representation about the speed of sale was not material because it did not affect "the total number of prizes, the odds of winning, or the amount of money at stake"—in other words, the essentials of the bargain. *Id.* And, as discussed in Defendant's motion, Mot. 11, this approach accords with other cases indicating that bargaining tactics and negotiating ploys such as best-and-final offers are not material where they do not touch upon the fundamentals of the bargain. *United States v. Weimert*, 819 F.3d 351, 358 (7th Cir. 2016); *Keasler v. Nat. Gas Pipeline Co. of Am.*, 569 F. Supp. 1180, 1187 (E.D. Tex. 1983). *Brummett*'s determination remains authoritative and this Court must defer to its analysis. *Jarvis v. Fed. Nat'l Mortg. Ass'n*, 2017 WL 1438040, at *2 (W.D. Wash. Apr. 24, 2017) ("[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.").

Accordingly, because Plaintiff failed to plead that Defendant's email subject lines were materially false or misleading, her claims are preempted and dismissal is warranted.[2]

---

[1] Plaintiff's reliance on Judge Zilly's brief minute order for this supposition, *see Harrington v. Vineyard Vines, LLC*, 813 F. Supp. 3d 1218, 1220 (W.D. Wash. 2025), *reconsideration denied*, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026), is similarly misplaced since, as noted, that issue was not before the Washington Supreme Court.

[2] Plaintiff erroneously treats materiality as an affirmative defense, despite admitting that it is an essential element of her claim, and as such she bears the burden of pleading materiality. *See, e.g.*, *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1079 (N.D. Cal. 2012) (dismissing complaint grounded in fraud where plaintiff failed to plead materiality); *Khan Air, LLC v. U.S. Aircraft Ins. Grp.*, 2005 WL 2739167, at *1 (W.D. Wash. Oct. 24, 2005) (dismissing counterclaims for fraud where counterclaimant failed to plead materiality).



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

**D. Plaintiff's Complaint Also Fails to Plead Scienter and Reliance, as Is Required to Escape Preemption.**

Plaintiff all but concedes that she did not plead scienter or reliance, further warranting the dismissal of her Complaint.

As an initial matter, Plaintiff does not even attempt to rebut Defendant's argument that she has not pleaded reliance. *See* Mot. 14-18; Resp. 14-16. Instead, she argues that she was not required to plead scienter or reliance to avoid preemption under her erroneous reading of *Virtumundo*. Resp 13-14. As noted above, that argument fails given *Virtumundo*'s express determination that CAN-SPAM's preemption exception only applies to state CEMA laws that incorporate "traditional tort theories." 575 F.3d at 1063. As Defendant acknowledges, Mot. 12-15, *Virtumundo* did not focus on scienter or reliance, but such elements necessarily follow from its reasoning that "the exception language, read as Congress intended, refers to 'traditionally tortious or wrongful conduct.'" *Virtumundo*, 575 F.3d at 1062 (quoting *Omega*, 469 F.3d at 354). The *Omega* Court similarly equated "falsity" with "deceitfulness, untrustworthiness, [and] faithlessness," 469 F.3d at 354, and noted that "[w]hether linked with materiality or 'deception,' we can find nowhere in the statute that Congress meant to apply falsity in a mere error sense," *id.* (citations omitted). And both the *Omega* and *Virtumundo* Courts emphasized aspects of reliance in their decisions, even if not referencing the concept expressly. *See Omega*, 469 F.3d at 353 (noting that the statute at issue "is not limited to inaccuracies in transmission information that . . . led to detrimental reliance by the recipient"); *Virtumundo*, 575 F.3d at 1063 (emphasizing that the plaintiff "admits he was not in any way misled or deceived").

Turning to scienter, courts in this District have similarly found other CEMA provisions preempted by CAN-SPAM where they did not appear to contain a knowledge requirement. *See Ferguson v. Quinstreet, Inc.*, 2008 WL 3166307, at *8 (W.D. Wash. Aug. 5, 2008) (contrasting CEMA provision with CAN-SPAM preemption exception and noting that '"[f]alsity' and 'deception,' in contrast, do not appear to include situations were [sic] 'bare error has occurred.'").



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

And one of Congress's goals in enacting CAN-SPAM was to prevent senders who "***purposefully*** include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8) (emphasis added).

Recognizing the inevitable, Plaintiff suggests that the reasonable inference of her allegedly well pleaded facts is that Defendant knew its deals would be extended. Resp. 14. But as detailed in Defendant's motion, Mot. 13-14, the general rule is that "allegations of fraud based on information and belief do not satisfy Rule 9(b)[.]" *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Plaintiffs alleging fraud or fraudulent conduct under Rule 9(b)[3] have to plead specific facts—not baseless conjecture—establishing that a defendant intended the fraudulent conduct. *Id.* Accordingly, courts have repeatedly dismissed complaints where the plaintiff fails to plead specific facts supporting their contention that the defendant issued a fraudulent or misleading statement. *See, e.g.*, *Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016); *Nat'l Prods. Inc. v. Arkon Res., Inc.*, 2016 WL 9224046, at *3 (W.D. Wash. Nov. 8, 2016); *see also Woodell v. Expedia Inc.*, 2019 WL 3287896, at *6 (W.D. Wash. July 22, 2019) (dismissing inadequately pled wire fraud claim under Rule 9(b) because "[a]lleging 'no more than suspicious circumstances' is insufficient" even for "matters within the opposing party's knowledge"). Plaintiff's cited cases on this point are inapposite. *Littlejohn v. Kaiser Found. Health Plan of Wash.*, 2024 WL 4451955 (W.D. Wash. Oct. 9, 2024), merely restates the basic legal standard for Rule 12(b)(6) motions and does not address heightened pleading requirements under Rule 9(b). *Id.* at *3. And the quoted portion of *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089 (9th Cir. 2011) refers to a statutory scienter provision for securities fraud. *Id.* at 1095.

---

[3] Plaintiff is also required to meet the Rule 9(b) standard because she alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Plaintiff repeatedly argues, citing to her Complaint, that Defendant partakes in a unified course of fraudulent conduct. Resp. 11 (noting that Defendant "is a 'sophisticated commercial enterprise' that has 'engaged in persistent marketing through mass email campaigns across the United States.'"); *id.* at 21 (noting that "there are *extensive* pleadings that these falsely urgent deal 'deadlines' were an intentional 'tactic,' 'strategy,' 'technique,' or 'practice' designed to lure consumers to act quickly").



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Plaintiff does not allege the factual basis for her belief that Defendant knew the email subject lines she identified in her Complaint were false at the time they were sent, instead relying on conclusory assertions that Defendant "always intended" to extend the promotion. *See, e.g.*, Compl. ¶¶62, 81. In the end, Plaintiff relies on "suspicious circumstances" to establish intent, which are not sufficient under even a relaxed version of Rule 9(b), *Neubronner*, 6 F.3d at 672, or general plausibility standards.

Plaintiff therefore fails to plead scienter or reliance and her claims are similarly preempted.

### E. Plaintiff's Claims Conflict with the National Standard Enacted by CAN-SPAM and Are Preempted.

Plaintiff misses the thrust of Defendant's conflict preemption argument. Plaintiff's interpretation of CEMA as applied is subject to conflict preemption because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 406 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

Plaintiff agrees that conflict preemption principles apply even where a statute includes a savings clause. Resp. 16. The parties also agree that CAN-SPAM was intended to create a national standard—something impossible to deny given the statute's express legislative purpose and legislative history. *See, e.g.*, 15 U.S.C. § 7701(a)(11) (finding that "[m]any States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements"); 15 U.S.C. § 7701(b)(1) (determining that "there is a substantial government interest in regulation of commercial electronic mail on a nationwide basis"); *see also Virtumundo*, 575 F.3d at 1063.

Plaintiff errs, however, in arguing that conflict preemption can apply only where "execution of the state law [] *impede*[s] execution of the federal law."[4] Resp. 16. In this vein, Plaintiff argues that her interpretation of CEMA does not conflict with the execution of CAN-

[4] Plaintiff's arguments regarding impossibility preemption also miss the mark, given that it need not be impossible to comply with both a state and federal law for the state law to nonetheless be preempted as an obstacle to Congress's objectives. *Arizona*, 567 U.S. at 399.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

SPAM's national standard, notably leaning on *Virtumundo*'s reasoning that states are free to extend "traditional tort theories" for fraud or deception to argue that states are free to enact laws "impos[ing] liability beyond the baseline provided by CAN-SPAM." Resp. 17.

The Supreme Court has made clear, however, that a law can be preempted on conflict preemption grounds even if the law "attempts to achieve one of the same goals as federal law" if the law "involves a conflict in the method of enforcement. The Court has recognized that a '[c]onflict in technique can be fully as disruptive to the system Congress erected as conflict in overt policy.'" *Arizona*, 567 U.S. at 406 (quoting *Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 287 (1971)). In *Arizona*, for example, the state enacted a law making it a crime for undocumented immigrants to knowingly apply for employment or to work for an employer in the state. *Id.* at 403. While the federal immigration law at issue (the Immigration Reform and Control Act of 1986 ("IRCA")) does not criminalize such activity, the IRCA makes it a crime for employers to knowingly hire undocumented immigrants and imposes civil penalties on undocumented immigrants. *Id.* at 404-05. The IRCA has an express preemption clause that specifies that states cannot penalize employers. *Id.* at 406. But the IRCA is silent as to whether states can impose penalties on employees themselves—such as the criminal penalties the Arizona law exacted on employees. *Id.* Relying on conflict preemption, the *Arizona* Court determined that the Arizona law was preempted even though the state law had the same goals as the federal law—reasoning that it "would interfere with the careful balance struck by Congress with respect to unauthorized employment of aliens." *Id.* at 406; *see also Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1274 (W.D. Wash. 2012) (finding state law creating criminal liability for online service providers for knowingly publishing unlawful materials was preempted by federal law in part because it conflicted in approach despite sharing some of the same goals).

As detailed in Defendant's motion, Plaintiff's theory of liability under CEMA (one that fails to incorporate the traditional tort elements of materiality, reliance, and scienter) conflicts with Congress's attempt through CAN-SPAM to create a harmonized national standard for regulating



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

commercial email message practices. Mot. 18-20. Even though CEMA and CAN-SPAM share similar goals—addressing false or misleading information from spam emails—Plaintiff's interpretation of CEMA, as pled, conflicts with the method of enforcement that Congress chose, as Plaintiff's allegations do not conform with traditional tort theories. *See Kleffman*, 2007 WL 1518650, at *3 (finding that Congress "left states room only to extend their *traditional* fraud prohibitions to the realm of commercial emails because it was confident that legitimate businesses would not unwittingly transgress such well-established prohibitions"); *see also Virtumundo*, 575 F.3d at 1063.

Plaintiff's Complaint should therefore separately be dismissed on this basis.

**F. Plaintiff Does Not Sufficiently Plead Falsity.**

Plaintiff's response to Defendant's arguments detailing her inadequate pleading, Mot. 20-22, confirms the paucity of her allegations. Contrary to Plaintiff's assertions, Resp. 18, the Court in *Brown* did not hold that all allegations regarding the duration or availability of a promotion were automatically falsifiable and therefore subject to CEMA's falsity analysis. Rather, the Court listed duration or availability as something that ***could*** be "substantiated." *Brown*, 4 Wn.3d at 596. But to do that, a plaintiff must allege falsifiable "representations of fact," something missing from Plaintiff's allegations here. *Id.*

Allegations regarding a "last chance," "last call," or "hours left" do not convey facts that can be falsified absent more information. Plaintiff does not allege, for example, the specific time that any of the emails she received were sent—a fact of critical importance for representations regarding the number of hours left. *See* Compl. ¶¶42-81. Nor, as discussed above, does Plaintiff allege well-pleaded facts, rather than conclusory allegations, establishing that Defendant knew its emails were false at the time it sent them. Suspicious circumstances are not enough. *Neubronner*, 6 F.3d at 672; *see also ML Prods. Inc. v. Ninestar Tech. Co.*, 2024 WL 6842620, at *8 (C.D. Cal. June 11, 2024) (dismissing allegations regarding fake review scheme as insufficient under both Rule 8(a) and Rule 9(b) where plaintiff merely alleged facts consistent with suspicious



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

circumstances).

## III. CONCLUSION[5]

Based on the foregoing, the Court should dismiss Plaintiff's Complaint.

DATED: April 22, 2026

*I certify that this memorandum contains 4,142 words, in compliance with the Local Civil Rules.*

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Kit W. Roth*
Kit W. Roth, WSBA #33059
T. Ray Ivey, WSBA #55683
Tjitske Dekker, WSBA #61558
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: kit.roth@morganlewis.com
ray.ivey@morganlewis.com
tjitske.dekker@morganlewis.com

**THOMAS J. MCANDREW & ASSOCIATES**

Thomas J. McAndrew (*pro hac vice)*
One Turks Head Place, Suite 205
Providence, RI 02903
Phone: (401) 455-0350
Email: tmcandrew@tjmcandrewlaw.com

*Attorneys for Defendant Dooney & Bourke, Inc.*

---

[5] Plaintiff concedes that her CPA claims depend on her CEMA claims, Resp. 21, and because Plaintiff fails to state a claim under CEMA her CPA claims fail as well.